**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAROLYN SPROUL,<br><br>            Plaintiff,<br><br>     vs.<br><br>WASHOE BARTON MEDICAL CLINIC,<br><br>            Defendant. | 3:10-cv-00801-RCJ-VPC<br><br>**ORDER** |

This case arises out of alleged age discrimination, Family Medical Leave Act ("FMLA") violations, and unlawful retaliation. Pending before the Court is a Motion to Dismiss (ECF No. 19). For the reasons given herein, the Court grants the motion in part.

**I.     FACTS AND PROCEDURAL HISTORY**

Plaintiff Carolyn Sproul was injured on the job while working for Defendant Washoe Barton Medical Clinic ("WBMC")[1] and sought workers compensation benefits. (Compl. ¶¶ 4–6, Dec. 24, 2010, ECF No. 1).  After she returned to work, WBMC demoted her on January 7, 2008 and terminated her on or about March 31, 2009. (*Id.* ¶¶ 7–9).  At all relevant times, Plaintiff was over forty years old, but Plaintiff was denied opportunities that persons substantially younger received. (*Id.* ¶¶ 10–11).

---

[1] Doing business as Carson Valley Medical Center.

1    Plaintiff sued Defendant in this Court on three causes of action: (1) FMLA violations; (2)
2  Age Discrimination in Employment Act ("ADEA") violations; and (3) "tortious retaliation and
3  discharge in violation of public policy."  Defendant moved to dismiss for failure to exhaust
4  administrative remedies, failure to state a claim, and under the statute of limitations.  The Court
5  granted the motion to dismiss in part and granted Plaintiff's motion to amend.  Plaintiff has filed
6  the First Amended Complaint ("FAC"), and Defendant has moved to dismiss it for failure to state
7  a claim.

8  **II.    LEGAL STANDARDS**

9    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
10 claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of
11 what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47
12 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action
13 that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule
14 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720
15 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for
16 failure to state a claim, dismissal is appropriate only when the complaint does not give the
17 defendant fair notice of a legally cognizable claim and the grounds on which it rests.  *See Bell*
18 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is
19 sufficient to state a claim, the court will take all material allegations as true and construe them in
20 the light most favorable to the plaintiff.  *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
21 Cir. 1986).  The court, however, is not required to accept as true allegations that are merely
22 conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden*
23 *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action
24 with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation
25 is plausible, not just possible.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,

550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**III.   ANALYSIS**

    **A.   FMLA**

Plaintiff originally alleged that Defendant terminated her for requesting and taking leave off from work, in violation of the FMLA. (*See* Compl. ¶¶ 18–20). Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under subchapter I of Chapter 28 of Title 29 or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by subchapter I. *Id.* § 2615(a)(1)–(2). To establish a prima facie case of retaliation in violation of the FMLA, a

1  plaintiff must establish: (1) she engaged in a protected activity under the FMLA; (2) she suffered

2  adverse action by the employer following the protected activity; and (3) the adverse employment

3  action was causally linked to the protected activity. *Raymond v. Albertson's Inc.*, 38 F. Supp. 2d

4  866, 869 (D. Nev. 1999) (Rawlinson, J.). The *McDonnell Douglas* burden-shifting framework

5  applies to an FMLA claim:

> [O]nce the employee has established a prima facie case, the burden shifts to the employer to articulate a legitimate nonretaliatory reason for its employment decision. Once the employer meets its burden, the employee must show that a material issue of fact exists regarding whether the employer's proffered reason for the challenged action is a pretext.

9  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)).

10  Defendant argued that Plaintiff alleged no FMLA retaliation, because she did not allege

11  that she was retaliated against for opposing any employer practices that are unlawful under

12  FMLA. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003). The Court agreed

13  that Plaintiff's claim must therefore be characterized as an interference claim, i.e., that Defendant

14  interfered with her rights under FMLA directly. But Plaintiff did not plead facts indicating that

15  she attempted to take leave under FMLA and was denied leave or was fired for taking it. She did

16  not allege having been fired for taking twelve or fewer workweeks of leave in a twelve month

17  period related to a "serious health condition that [made her] unable to perform the functions of

18  [her] position." Nor did she allege that she hd opposed some unlawful employer practice under

19  FMLA and that she was terminated therefor. The Court therefore dismissed the FMLA claim,

20  with leave to amend.

21  Plaintiff has amended. She now alleges that her supervisor, Mr. Wes Wilde, told her

22  prior to her medical leave from July to September 2007 that the company did not like worker's

23  compensation cases and that she should not file any worker's compensation claims. (*See* First

24  Am. Compl. ¶¶ 9–11, Nov. 14, 2012, ECF No. 18). Wilde also gave Plaintiff her first notice of

25  corrective action in nine years of employment with the company on the very day she returned

1  from medical leave concerning activities that she was not involved in, but that other employees

2  were. (*Id.* ¶¶ 13–14). Wilde also began treating Plaintiff differently and eventually gave her two

3  more notices of corrective action, resulting in her demotion and termination. (*Id.* ¶¶ 15–18,

4  31–32).

5        An FMLA interference claim can rest upon an allegation that an employer "chilled"

6  FMLA rights by attaching negative consequences to the use of FMLA rights. *See Bachelder v.*

7  *Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001) ("The Labor Department's conclusion

8  that employer use of 'the taking of FMLA leave as a negative factor in employment actions,' 29

9  C.F.R. § 825.220(c), violates is the Act is . . . a reasonable one."). Wilde's alleged comments

10 and the timing of the notices of corrective action are sufficient to support a prima facie case of

11 FMLA interference (though not of FMLA retaliation). Defendant argues that the alleged

12 demotion and denial of EKG training were too remote from Plaintiff's FMLA leave to support a

13 finding of causation, but Plaintiff has alleged comments indicating an intent to punish her for

14 having taken leave, and the allegation of a groundless notice of corrective action on the very day

15 she returned, which, combined with two later notices of corrective action, led to Plaintiff's

16 termination, is enough to establish a causal nexus. It is a reasonable inference from the

17 allegations that the second and third notices of corrective action would not have led to Plaintiff's

18 demotion and termination, respectively, if she had not been given the first notice the day she

19 returned from leave. She also implies a continuing atmosphere of harassment, i.e., that based

20 upon her use of FMLA leave and/or her filing of the workers compensation claim, Wilde was

21 looking for pretenses upon which to retaliate against her, a situation that is not implausible.

22 Defendant will have the opportunity to show that there is no genuine question of material fact at

23 the summary judgment stage, but Plaintiff has sufficiently pled the claim.

24       Finally, Defendant argues that the last alleged violative act occurred more than two years

25 before the claim was brought. *See* 29 U.S.C. § 2617(c)(1) ("Except as provided in paragraph (2),

1  an action may be brought under this section not later than 2 years after the date of the last event

2  constituting the alleged violation for which the action is brought."). Defendant also argues that

3  Plaintiff does not allege a willful violation such that the period would be extended to three years.

4  *See id.* § 2617(c)(2). Plaintiff filed the Complaint in 2010 after having been terminated in 2009.

5  Defendant argues that the limitations period ran in 2009, two years after Defendant is alleged to

6  have interfered with Plaintiff's FMLA leave by giving her the initial notice of corrective action.

7  But the actionable harm did not occur in 2007 upon receipt of the initial notice. The actionable

8  harms occurred in 2008 (demotion) and 2009 (termination) and would not have occurred but for

9  the initial notice in 2007. More importantly, Plaintiff sufficiently alleges that all of Wilde's

10 negative actions against her, including the second and third notices of corrective action

11 themselves, were motivated by his animus against Plaintiff for having taken medical leave and

12 filed a workers compensation claim. This is a question of fact. The Court will not dismiss the

13 FMLA interference claim.

14       **B.    ADEA**

15       An ADEA plaintiff can establish a prima facie case by alleging that she was "(1) at least

16 forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by

17 substantially younger employees with equal or inferior qualifications or discharged under

18 circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle*

19 *Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation and internal quotation marks

20 omitted). In this Circuit, an ADEA plaintiff must meet certain prerequisites before filing suit but

21 need not exhaust all available administrative remedies. The Ninth Circuit had previously held

22 that an ADEA claimant who appeals to an administrative agency for redress must then exhaust

23 her remedies with that agency before filing suit and cannot simply withdraw an administrative

24 complaint in order to sue. *See Rivera v. U.S. Postal Serv.*, 830 F.2d 1037, 1039 (9th Cir. 1987).

25 However, the court later reversed itself in the face of an intervening regulation. *See Bak v. U.S.*

1 *Postal Serv.*, 52 F.3d 241, 243–44 (9th Cir. 1995) (citing 29 C.F.R. § 1613.513 (1987) ("The filing of a civil action by an employee or applicant involving a complaint filed under this subpart terminates processing of that complaint.")). The *Bak* court stated:

> In accord with the Second and Seventh Circuits, we hold that a claimant is no longer required to exhaust his administrative remedies with regard to an age discrimination claim prior to filing a civil suit.
>
> . . . .
>
> Thus, we hold that the amended regulations eliminate the exhaustion requirement for age discrimination claims and vacate the district court's dismissal for lack of subject matter jurisdiction and remand.

*Id.* at 244. The code has been further amended, and the current language reads in relevant part:

> (b)  An aggrieved person whose claims are the subject of a timely pending charge may file a civil action at any time after 60 days have elapsed from the filing of the charge with the Commission (or as provided in § 1626.12) without waiting for a Notice of Dismissal or Termination to be issued.
>
> . . . .
>
> (d)  If the Commission becomes aware that the aggrieved person whose claim is the subject of a pending ADEA charge has filed an ADEA lawsuit against the respondent named in the charge, it shall terminate further processing of the charge or portion of the charge affecting that person unless [certain officials] or their designees determine at that time or at a later time that it would effectuate the purpose of the ADEA to further process the charge.

29 C.F.R. § 1626.18(b), (d) (2010). In other words, a plaintiff may sue under the ADEA so long as she files a "charge" and gives the Equal Employment Opportunity Commission ("EEOC") sixty days to consider it before suing. After a plaintiff files a suit, the EEOC may either dismiss the administrative charge of discrimination or continue to investigate it. Although an ADEA plaintiff need not exhaust administrative remedies as a prerequisite to suit, she must file a charge of discrimination with the EEOC or the equivalent state agency in the first instance and wait sixty days. *See Sanchez v. Pac. Power Co.*, 147 F.3d 1097, 1099 (9th Cir. 1998). For the charge of discrimination to be timely, the plaintiff must either file it with the EEOC directly within 180 days of the alleged discriminatory act or file it with the appropriate state agency within 300 days

1  of the act. *Id.* (citing 29 U.S.C. §§ 626(d)(1)–(2), 633(b)).  A charge is considered "filed with the

2  EEOC" under ADEA when it is "received" by either the EEOC itself or the equivalent state

3  agency. *Id.* (citing 29 C.F.R. §§ 1626.10(c), 1626.7).  Therefore, in order for the present suit to

4  be proper, Plaintiff must have: (1) filed a "charge" relating to the allegations in the present suit;

5  (2) filed the charge with the EEOC within 180 days of the alleged discriminatory act or with the

6  Nevada Equal Rights Commission ("NERC") within 300 days of the alleged discriminatory act;

7  and (3) filed the present suit sixty or more days after having filed the charge.

8        The Court previously concluded that both Plaintiff's age discrimination charge to the

9  EEOC and this follow-on lawsuit were timely, and that based upon the content of the charge of

10  discrimination ("COD"), the Court had jurisdiction to hear the claim insofar as it concerned

11  Plaintiff's demotion, but not her later termination.  In the COD, Plaintiff alleged that she was

12  demoted from "Phlebotomy Supervisor/Lead Lab Assistant" to "Lab Tech Assistant" and that her

13  "employer ha[d] also showed favoritism toward younger female employees, offering then

14  training classes, higher positions, higher pay and other benefits that [we]re not offered to me and

15  other older employees." (*See* COD 2).  Plaintiff based the second cause of action under ADEA,

16  however, on the allegation that younger employees "were given the opportunity to work in the

17  EKG Department instead of Plaintiff." (*See* Compl. ¶ 27).  The Court noted that if working in the

18  EKG Department constituted a "higher position," as explained in the COD, then the Court would

19  have jurisdiction over that claim.  Plaintiff also complained of the demotion in both the COD and

20  in the general allegations of the Complaint. (*See* COD 2; Compl. ¶ 8).

21        The Court ruled that it had jurisdiction over the ADEA claim insofar as the harm

22  complained of was the demotion and the inability to move to the EKG Department, but these

23  were the only two injuries alleged in both the COD and the Complaint.  There was no jurisdiction

24  over the termination claim because it was not complained of in the COD, and no other adverse

25  actions were pled in the Complaint, although the Court gave Plaintiff leave to amend to add

additional adverse actions that fell within the scope of the injuries identified in the COD, i.e., the "higher positions, higher pay and other benefits."

It does not appear that Plaintiff has alleged any additional injuries in the FAC apart from the demotion and the inability to move to the EKG Department. She has sufficiently pled an ADEA claim as to these injuries however. She alleges that she was sixty-two years old, and that at least three other employees, whom she identifies by name, who were in their early 30s were given training to work in the EKG Department for higher pay while Plaintiff was denied this ability, even though these other employees' only EKG experience before this additional training had been training received from Plaintiff herself, such that it was impossible they had equal or superior EKG skills. (*See* First Am. Compl. ¶¶ 17–30). The Court will not dismiss this claim, except as to the termination claim, over which the Court does not have jurisdiction, and as to the claim for punitive damages, which are not available. *See Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1059 (9th Cir. 2009).

### C. Wrongful Discharge

"Under Nevada law, the absence of a written contract gives rise to the presumption that employment is at will." *Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 759 (9th Cir. 1992) (citing *Vancheri v. GNLV Corp.*, 777 P.2d 366, 368 (Nev. 1989)). At-will employment can be terminated without liability by either the employer or the employee at any time and for any reason or no reason, *Martin v. Sears-Roebuck & Co.*, 899 P.2d 551, 554 (Nev. 1995), with limited exceptions based on "strong public policy," *see Hansen v. Harrah's*, 675 P.2d 394, 396 (Nev. 1984) (holding that an at-will employee can bring an action for retaliatory discharge when fired in retaliation for filing a worker's compensation claim). Because Plaintiff has not specifically alleged a written contract, for the purposes of the present motion the presumption of at-will employment applies.

An employer may be liable for tortious discharge in Nevada in the context of an at-will

employment relationship where it terminates an employee in a way repugnant to the "strong public policy" of the state. *Hansen*, 675 P.2d at 396. The Supreme Court of Nevada has noted that terminating an employee "for seeking industrial insurance benefits, for performing jury duty or for refusing to violate the law" are examples of violations of Nevada's "strong public policy." *See D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev. 1991). Not all terminations contrary to the express or implied public policy of the state, however, necessarily implicate the "strong public policy" exception to the at-will employment rule as defined by the Nevada Supreme Court, *see, e.g.*, *Sands Regent v. Valgardson*, 777 P.2d 898, 899 (Nev. 1989) (ruling that age discrimination was not against the "strong public policy" of the state, despite the fact that the Nevada Legislature had expressly announced a public policy against age discrimination), and firings for insubordination are not contrary to public policy at all, *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996). Finally, termination with a mixed motivation will not support a wrongful discharge claim under Nevada law; the motivation must have been purely wrongful. *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1066 (Nev. 1998).

Here, Plaintiff originally alleged two tortious reasons for her termination: filing a workers compensation claim and filing charges with the EEOC. (*See* Compl. ¶¶ 33–34). Discharge in retaliation for filing a workers compensation claim is actionable even by an at-will employee. *See Hansen*, 675 P.2d at 396. Plaintiff does not and could not list age discrimination as a basis for wrongful discharge. *See Valgardson*, 777 P.2d at 899. The Court previously ruled that if age discrimination did not support the "strong public policy" exception to the at-will employment doctrine, then the Nevada Supreme Court would determine that retaliation for having filed an age discrimination complaint does not support the exception either. Plaintiff also included an ADA claim in her COD to the EEOC. But the Nevada Supreme Court has not adopted disability discrimination as an exception to the at-will employment doctrine, and the Court therefore ruled that retaliation for having filed an ADA complaint did not support the "strong public policy"

exception either. *See Herman v. United Bhd. of Carpenters & Joiners of Am., Local 971*, 60 F.3d 1375, 1385 (9th Cir. 1995) (predicting that in light of *Valgardson* the Nevada Supreme Court would not apply the exception in cases of disability discrimination). In conclusion, the Court ruled that Plaintiff's wrongful discharge claim must rely on alleged retaliation for her having filed the workers compensation claim. In the present motion, Defendant correctly notes that only termination, and not other forms of retaliation, are actionable under a wrongful discharge theory.

Defendant previously argued that there was no nexus between the workers compensation claim filed in 2004 and Plaintiff's termination. The Court agreed that Plaintiff had simply alleged in conclusory fashion that her 2009 termination was in retaliation for her having filed for workers compensation benefits in 2004. She had pled no facts making a nexus between the two plausible, and as a matter of law a five-year temporal proximity could not support a finding of causality without more. *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (twenty-month gap insufficient in a Title VII retaliation case, without more, although a three- or four- month gap might suffice without further evidence of causation).[2] The Court gave Plaintiff leave to amend.

In the FAC, Plaintiff has sufficiently alleged the causal nexus between her workers compensation claim and her eventual termination. She now specifically alleges that Wilde told her prior to her medical leave from July to September 2007 that the company did not like worker's compensation cases and that she should not file any worker's compensation claims. (*See* First Am. Compl. ¶¶ 9–11). As also noted, *supra*, Wilde gave Plaintiff her first notice of corrective action in nine years of employment with the company on the very day she returned from medical leave concerning activities that she was not involved in, but that other employees

---

[2] The Nevada Supreme Court gave this reasoning in an unreported workers compensation retaliation case. *See Hardy v. Chromy*, No. 53956, 2010 WL 5541181, at *5 (Nev. Dec. 20, 2010).

were. (*Id.* ¶¶ 13–14). Wilde also began treating Plaintiff differently and eventually gave her two more notices of corrective action, resulting in her demotion and eventual termination. (*Id.* ¶¶ 15–18, 31–32). Wilde's alleged comments and the timing of the first notice of corrective action are sufficient to make out a claim of causal nexus as to the wrongful discharge claim. It is a fair inference that all of the adverse actions, including the termination, were motivated by animus for having filed the workers compensation claim. For the same reasons given, *supra*, the Court also rejects the two-year limitations argument as to this claim. The Court will not dismiss this claim, although Defendant will be entitled to a jury instruction (if the claim survives summary judgment) that the claim only lies if Plaintiff's workers compensation claim was the sole reason for her firing, but not if age discrimination was also a factor. *See Allum*, 970 P.2d at 1066.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 19) is GRANTED IN PART and DENIED IN PART. The FMLA claim is dismissed insofar as it relies upon a retaliation theory. The ADEA claim is dismissed insofar as it relies on Plaintiff's termination and insofar as it seeks punitive damages.

IT IS FURTHER ORDERED that the Motions to Extend Time (ECF Nos. 21, 23) are GRANTED.

IT IS SO ORDERED.

Dated this 26th day of April, 2013.

_____
ROBERT C. JONES
United States District Judge